UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS


| | | |
|---|---|---|
| IN RE | : | CHAPTER 7 |
| THOMAS A. NEWCOMB, | : | |
| <u>DEBTOR                                              </u> | : | CASE NO.08-43143-JBR |


**MEMORANDUM OF DECISION ON MOTION TO AVOID LIENS**

This matter came before the Court for hearing on the Debtor's Motion to Avoid Liens [#35] whereby the Debtor seeks to avoid the judicial liens of Chicago Title Insurance Company ("Chicago Title") and New England Phoenix Company, Inc. ("New England Phoenix"). New England Phoenix did not respond to the motion. Chicago Title, however, filed an opposition thereto [#44] to which the Debtor filed a response [#45]. After the hearing both parties filed supplemental memoranda [#50 and # 51]. The parties dispute whether Chicago Title's judicial lien may be avoided and frame the issue as whether or not the Debtor's homestead is subordinated to the attachment by virtue of an unrecorded subordination agreement. The answer to that question is expressly found in the Massachusetts homestead statute, but while the answer enables the Debtor to win this battle, he may ultimately lose the war.

**Facts**:

The Debtor, a disbarred attorney, had been an agent for Chicago Title issuing title policies for both lenders and borrowers and conducting real estate closings from approximately January 2, 1998 until approximately March 20, 2006. At some point, perhaps as early as 2003, he began misusing his conveyancing account. On March 22, 2006 Chicago Title's audit of the

Debtor's accounts confirmed a shortfall of $331,401.43 in the Debtor's conveyancing account. On March 23, 2006[1] the Debtor filed a Declaration of Homestead on property owed by Debtor, and perhaps his now ex-wife, at 9 Clarissa Road, Chelmsford, MA (the "Property").[2]  The next day Chicago Title filed a state court action against the Debtor and obtained an attachment in the amount of $331,401.43 on his interest in the Property.

On February 27, 2007 the Debtor and Chicago Title entered into an Agreement for Judgment, a copy of which is attached to Chicago Title's Opposition.  The Agreement gave Chicago Title judgment in the amount of $301,747.00 and required the Debtor to give Chicago Title a promissory note in the amount of the judgment.  It also provided, among other things that the Debtor was to give Chicago Title a mortgage on his property, including the Property, to secure the aforementioned promissory note.  *See* Agreement at E and F.  The Agreement also provided that the Debtor "hereby agrees to release any and all claims and rights of homestead as to the obligations to Chicago Title...." Agreement at L.  The Agreement further provided that upon entry of judgment, an execution on the judgment was to issue "forthwith" but it unclear whether the execution issued.  Chicago Title, however, agreed to levy and suspend as long as the Debtor was not in default of any obligations under any settlement documents which included a

---

[1] In the Motion to Avoid Liens, the Debtor states he recorded a homestead on the Property on March 23, *2008*. It is unclear whether the date in the Motion to Avoid Liens is incorrect or whether there was a second homestead put on the Property two years after the March 23, 2006 homestead. The Court notes that during the hearing on the Motion to Avoid Liens, Chicago Title's counsel referred to the homestead as having been recorded on March 23, 2006 and the Debtor's attorney did not interject that the date was wrong or that there was a later filed homestead.

[2] It is unclear whether the Debtor and his then wife, Donna Newcomb, owned the Property on March 23, 2006 although, as noted *infra*, they both joined in the deed conveying the Property.

"Deed." Although the Agreement references a "Deed" as a defined term, there is no definition of the term in the Agreement. Moreover the only other reference to a "deed," as a non-capitalized term, was with regard to other property to be conveyed by the Debtor to his wife.

On February 27, 2007, the same day that the Agreement was signed, the state court entered judgment which essentially repeated the terms in the Agreement. Neither party addressed whether an execution issued. On February 27, 2007 the Debtor and his wife executed a Subordination of Declaration of Homestead on the Property to any interest Chicago Title had or may acquire in the Property. The Debtor also gave Chicago Title a note and mortgage as called for in the Agreement and judgment although the dates of these instruments are unclear.

On April 2, 2007 the Debtor and Donna M. Newcomb executed a quitclaim deed (the "April 2007 Deed") conveying the Property to the Debtor and Chicago Title, or its nominee, as tenants in common.[3] The parties did not provide the Court with a copy of the deed or the mortgage. Chicago Title did not record the deed, the mortgage, or the subordination agreement.

On January 28, 2008 New England Phoenix recorded a judicial lien in the amount of $90,000 against the Debtor's interest in the Property.

On September 30, 2008 the Debtor filed a voluntary petition pursuant to Chapter 7 of the United States Bankruptcy Code. On Schedule A the Debtor described his interest in the Property as "Owner" and valued the Property at $240,000 although on Schedule D he listed the value at

---

[3]According to both Chicago Title's Opposition to the Motion to Avoid and its Motion for Relief, the Debtor gave Chicago Title a deed, as well as a mortgage and the Subordination Agreement for the Property. The Motion for Relief previously filed by Chicago Title provides the date. The Debtor admitted that allegation in his response to the Motion for Relief. The Court takes judicial notice of these pleadings as well as the Debtor's schedules. *In re Hyde*, 334 B.R. 506, 509 (Bankr. D. Mass. 2005).

$260,000. In the Motion to Avoid Liens he refers to a September 29, 2008 appraisal which values the Property at $275,000. Schedule D indicates that, in addition to the judicial liens, the Property is encumbered by two mortgages other than the one given to Chicago Title;[4] the mortgages are in the amounts of $109,120.07 and $82,502.04, respectively. The Debtor claims an exemption of $68,377.89 pursuant to the Massachusetts homestead statute. The time to file objections to the exemptions passed without objection.

Chicago Title sought relief from the automatic stay in order to record the deed, mortgage, and subordination agreement. The Debtor objected and after hearing, the Court denied the motion for relief. On February 5, 2009, the same day that the order denying relief entered, the Debtor filed the Motion to Avoid Liens.

**POSITION OF THE PARTIES**

The Debtor moved to avoid Chicago Title's attachment, as well as the $90,000 judicial lien obtained by New England Phoenix, because they impair his homestead exemption under the mathematical formula set forth in 11 U.S.C. § 522(f). Chicago Title urged the Court to take no action on the Motion until after the United States Trustee had determined whether she would object to the Debtor's discharge or seek dismissal of the case[5] but if the Court were to act on the Motion, Chicago Title argued that its lien does not impair an exemption to which the Debtor is otherwise entitled because he signed a subordination agreement. The Debtor responded by citing

---

[4]Chicago Title's unrecorded mortgage is not listed on Schedule D; only its judicial lien is noted on the Schedule.

[5]The United States Trustee obtained an extension of the deadline to object to discharge or seek dismissal under 11 U.S.C § 707(b). The time has now expired and neither action was taken.

M.G.L. c. 188, § 7 which provides that a homestead may be terminated during the lifetime of the owner in two ways: by a deed conveying the homesteaded property if no express reservation of the homestead appears in the deed, or by release properly *recorded in the Registry of Deeds*. Because the subordination was not recorded, the Debtor asserts it is ineffective.

At the hearing the Debtor also argued the 11 U.S.C. § 522(e) renders the waiver of his homestead with respect to Chicago Title unenforceable while Chicago Title alleged that the *Rooker-Feldman* doctrine prevents this Court from avoiding the judicial lien and cites this Court's decision in *In re Zambre*, 306 B.R. 428 (Bankr. D. Mass. 2004). Chicago Title also argued that issue preclusion bars this Court's consideration of the validity of the waiver citing the Supreme Judicial Court's decision in *Anusavice v. Bd. of Registration in Dentistry*, 451 Mass. 786, 889 N.E.2d 953 (2008). Following the hearing the parties submitted supplemental memoranda which reiterated their previous arguments.

**DISCUSSION**

"Pursuant to 11 U.S.C. § 522(f)(1), a debtor may avoid a judicial lien which impairs his exemption. In order to be successful in avoiding a judicial lien pursuant to § 522(f), the Court must determine: (1) whether the debtor is entitled to an exemption; (2) the extent to which the lien may be avoided; and (3) whether the lien does in fact impair the exemption." *In re Mariano,* 311 B.R. 335, 382 (Bankr. D. Mass. 2004). The Debtor has the burden to prove by a preponderance of the evidence that the lien is avoidable. *In re Huie,* 2007 WL 2317152, 4 (Bankr. E.D. Tex. August 8, 2007); *In re Tinker,* 355 B.R. 380, 383 (Bankr. D. Mass. 2006).

Because Chicago Title has not alleged that the April 2007 Deed terminated the Debtor's homestead, the Court assumes that the April 2007 deed preserved the homestead. Even if it did

5

not, Chicago Title has waived this argument and the Court is not inclined to use its equitable authority under 11 U.S.C .§ 105(a) to advocate on Chicago Title's behalf.

M.G.L. c. 188, § 7 provides, in clear and unambiguous language, that a homestead may be terminated during the lifetime of the owner in only two ways: by a deed conveying the homesteaded property if no express reservation of the homestead appears in the deed, or by release properly *recorded in the Registry of Deeds*.[6] The Court must interpret a statute according to its plain terms unless doing so would produce an absurd result. *In re Rudler*, 388 B.R. 433, 439 (B.A.P. 1st Cir. 2008); *United States v. Vest*, 639 F. Supp. 899, 908 (D. Mass. 1986) ("If a plain meaning is disclosed by reading the text of the statute, and the application of that meaning does not produce results that are absurd or at variance with the policy of the enactment as a whole, that ends the inquiry.") (internal quotations omitted). Because the subordination agreement was not recorded, it is not effective under Massachusetts law.

Chicago Title's argument that the Debtor agreed to waive his homestead as to Chicago Title is unavailing. Even if the subordination were effective under state law, the express

---

[6],M.G.L. c. 188, §7 provides:

> An estate of homestead created under section two [note this is one of the many typographical errors in the Massachusetts homestead statute] may be terminated during the lifetime of the owner by either of the following methods:--
>
> (1) a deed conveying the property in which an estate of homestead exists, signed by the owner and the owner's spouse, if any, which does not specifically reserve said estate of homestead; or by
>
> (2) a release of the estate of homestead, duly signed, sealed and acknowledged by the owner and the owner's spouse, if any, and recorded in the registry of deeds for the county or district in which the property is located.
>
> A deed reserving said estate of homestead shall convey, according to its terms, any title or interest in the property beyond the estate of homestead.

language of § 522(f) makes it clear that judicial liens may be avoided "[n]othwithstanding any waiver of exemptions...." Similarly Chicago Title's reliance upon this Court's decision in *Zambre* is misplaced. In that case the state court previously held that a debtor's claim of homestead was invalid as a fraudulent transfer; the debtor did not appeal, and the state court order became final. The debtor then filed bankruptcy and, arguing that the recordation of a homestead was not a transfer, asked the Court to find his homestead valid despite the state court's order that it was null and void. This Court refused to do so finding that the *Rooker-Feldman* doctrine prohibits lower federal courts from sitting as "superappeals" courts to review final state court orders. *Id.* at 431-32. The holding in *Zambre* comports with the Supreme Court's pronouncement that the "*Rooker-Feldman* doctrine ... is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 284, 125 S.Ct. 1517, 1521 - 1522 (2005). Chicago Title, however, was not the losing party in the state court proceedings. Its "loss" is occasioned by its own inaction.

Chicago Title's argument that the Supreme Judicial Court's decision in *Anusavice* compels this Court to apply issue preclusion to the state court judgment is also unavailing as that decision involved the consideration the Massachusetts Board of Registration in Dentistry may give to action taken against the dentist by Rhode Island's registration board. Here the state court judgment ordering the Debtor to subordinate his homestead, a provision with which the Debtor complied, cannot trump the Bankruptcy Code's directive that a waiver of an exemption does not

negate avoiding a judicial lien that impairs such exemption in most instances.[7] *Cf. Patriot Portfolio, LLC v. Weinstein (In re Weinstein)*, 164 F.3d 677, 683 (1st Cir. 1999).

In their volleying over the efficacy of the subordination agreement, the parties seemingly fail to focus on the deed and mortgage given to Chicago Title except to acknowledge that a deed and mortgage were given but not recorded. Unlike with a subordination agreement, the Massachusetts statute does not require a deed to be recorded to terminate a homestead; all that is required is that the homestead not be reserved in the conveying deed. M.G.L. c. 188, § 7(1). Because the deed has not been provided to the Court, it cannot make a determination of whether the homestead is in fact still in existence. Because Chicago Title failed to raise that argument and New England Phoenix failed to respond at all, the Court will put the parties in the positions where the arguments they advanced send them. The judicial liens will be avoided, a result which now seems to clear the path for the Trustee to use his strong arm powers to preserve Chicago Title's unrecorded deed and mortgage for the benefit of the estate.[8]

---

[7] Section 522(f)(3) is not applicable to this case.

[8] Section 544(a)(3) vests the Trustee with the powers of a bona fide purchaser of real property for value, and allows the Trustee to invalidate unperfected security interests. Because Massachusetts is a title theory state, if the mortgage given to Chicago title contains language sufficient to find it was given with mortgage covenants, such mortgage is sufficient to subordinate a preexisting homestead to the mortgage. *In re Desroches,* 314 B.R. 19, 23 (Bankr. D. Mass.2004). The Trustee's status as a hypothetical bona fide purchaser also renders the unrecorded deed ineffective against the Trustee. *In re Garrido Jimenez,* 370 B.R. 878, 881 (1st Cir. BAP 2007).

  A separate order will issue.

Dated: April 8, 2009           _____
                 Joel B. Rosenthal
                 United States Bankruptcy Judge