UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| IN RE | : | CHAPTER 7 |
| THOMAS A. NEWCOMB, | : | |
| <u>DEBTOR</u> | : | CASE NO.08-43143-JBR |

**MEMORANDUM OF DECISION ON DEBTOR'S MOTION TO COMPEL
ABANDONMENT OF PROPERTY OF THE ESTATE**

This matter came before the Court on the Debtor's Motion to Compel Abandonment of Property of the Estate [# 68] seeking to compel the Chapter 7 Trustee to abandon the estate's interest in the Debtor's home, and the Chapter 7 Trustee's Opposition thereto [# 69]. Neither party has requested an evidentiary hearing and both have filed supplemental memoranda in response to specific questions posited by the Court. Thus the matter is now ready for adjudication.

**FACTS AND TRAVEL OF THE CASE**

The facts leading up to the Abandonment Motion are set forth in the Court's earlier decision granting the Debtor's motion to avoid judicial liens [# 54], *In re Newcomb*, 2009 WL 961503 (Bankr. D. Mass. April 8, 2009). They are summarized as follows.

In March 2006 Chicago Title Insurance Company sued the Debtor as a result of a confirmed shortfall in the Debtor's conveyancing account and obtained an attachment on the Debtor's interest in property he occupied as his residence (the "Property"). The day before the lawsuit was filed, the Debtor filed a Declaration of Homestead. Subsequently the Debtor and Chicago Title entered into an Agreement for Judgment whereby Debtor gave Chicago Title a note in the amount of $331,401.43, secured by a mortgage on the Property. The Debtor also

gave Chicago Title an agreement, signed by the Debtor and his wife, subordinating the homestead to any interest Chicago Title had or might acquire in the Property.  Previously it was represented to the Court that the Debtor and Donna M. Newcomb, the Debtor's wife, executed a quitclaim deed in April 2007 (the "April 2007 Deed") conveying the Property to the Debtor and Chicago Title, or its nominee, as tenants in common in accordance with the Agreement for Judgment.  The parties did not provide the Court with a copy of the deed or the mortgage.  Chicago Title did not record the deed, the mortgage, or the subordination agreement.

On September 30, 2008 the Debtor filed his Chapter 7 petition.  Shortly thereafter Chicago Title unsuccessfully moved for relief from the automatic stay to record all of the unrecorded documents.  On February 5, 2009, the same day Chicago Title's motion for relief was denied, the Debtor moved to avoid the $331,401.43 judicial lien of Chicago Title and a $90,000.00 judicial lien of New England Phoenix Company, Inc.  In the lien avoidance motion the Debtor valued the Property at $275,000.00 and noted that, in addition to the judicial liens, the Property was encumbered by two mortgages other than the one given to Chicago Title.  The mortgages, which were recorded prior to either of the judicial liens, were listed in the amounts of $109,120.07 and $82,502.04, respectively.  The Debtor claimed an exemption of $68,377.89 pursuant to the Massachusetts homestead statute.  The time to file objections to the exemptions passed without objection.

Chicago Title opposed the lien avoidance motion.  The Debtor and Chicago Title argued that the only issue relevant to the lien avoidance motion was whether the Debtor's homestead was subordinated to Chicago Title's attachment by virtue of an unrecorded subordination agreement.  The Court concluded that it was not based upon the express requirement in the

2

Massachusetts homestead statute that such agreements be recorded.  Therefore, on April 8, 2009 the Court entered an order avoiding the judicial liens.[1]

Less than a month later, the Debtor filed a motion to hold Chicago Title in contempt. Chicago Title had obtained a quitclaim deed, dated December 13, 2006, from Donna M. Newcomb whereby she deeded whatever interest she had in the Property to Chicago Title.  In that motion the Debtor represented that he and Donna M. Newcomb were divorced in March 2007 and that pursuant to the divorce agreement, they held the Property as co-tenants.  On February 23, 2009, after failing to obtain relief from the automatic stay to record several documents, including the April 2007 Deed signed by both the Debtor and Donna M. Newcomb, Chicago Title filed the December 13, 2006 deed.  On May 6, 2009 Chicago Title filed its opposition to the contempt motion and attached a copy of the April 2007 Deed.  This was the first time that the Court, and apparently counsel for the Debtor, saw the April 2007 Deed.[2]  The contempt motion was denied.

The April 2007 Deed is a Massachusetts quitclaim deed signed by both the Debtor and Donna M. Newcomb.[3]  The April 2007 Deed filed by Chicago Title does not actually grant the

---

[1]A confirmatory order, in recordable form, entered on September 30, 2009.

[2]As these events were transpiring, Chicago Title commenced an adversary proceeding, Adv. Pro. No. 08-4210, to have its claim declared nondischargeable.  On May 14, 2009, after the Court entered its order on the lien avoidance motion, Chicago Title filed its certification of disclosure pursuant to Fed. R. Civ. P. 26, made applicable to the adversary proceeding by Fed. R. Bankr. P. 7026.  Chicago Title attached copies of documents, including the April 2007 Deed. The Debtor's bankruptcy counsel did not represent the Debtor in the Adversary Proceeding. The Debtor and Chicago Title dismissed the Adversary Proceeding with prejudice in November 2009.

[3]The notaries' acknowledgments indicate that the deed, which is dated April 2, 2007 was signed by the Debtor on February 28, 2007 and by Donna M. Newcomb on April 2, 2007.

3

Property to the Debtor and Chicago Title but rather has a blank for a name of a co-tenant to be filled in, followed by the words "and Thomas A. Newcomb, as tenants in common." The April 2007 Deed also contains the following language: "All rights of homestead and any other rights are hereby released."

On October 13, 2009 the Debtor filed the Abandonment Motion; the Chapter 7 Trustee opposes the Abandonment Motion. Because the Court was aware of the actual contents of the April 2007 Deed by that time, it issued a request for supplemental memoranda relating to the issue of whether the Court's order avoiding the judicial lien should be vacated.

**POSITION OF THE PARTIES**

The Debtor urges the Court to leave its previous orders undisturbed and simply apply 11 U.S.C. § 522(i). He argues that the unrecorded deed and mortgage are subordinate to the recorded judicial liens which have now been avoided, and that under § 522(i), he has the right to step into the shoes of the avoided lienholders and preserve the equity for himself. Because the first and second mortgages plus the full amount of the homestead he could claim far exceed the value of the Property, the Property is of no value to the Trustee even if he were to step into the shoes of Chicago Title. Moreover, he advocates that the Court follow *In re Tofani*, 365 B.R. 338 (Bankr. D. Mass. 2007), in which Judge Somma held that a creditor who failed to file a timely objection to a debtor's homestead objection could not challenge the validity of the exemption as a defense to the avoidance of a judicial lien, rather than Judge Feeney's decision in *In re Tinker*, 355 B.R. 380 (Bankr. D. Mass. 2006), in which she reached the opposite conclusion.

Although the Chapter 7 Trustee continues to oppose the Abandonment Motion, he argues that the April 2007 Deed was ineffective to transfer any interest in the Property and to release the

homestead. He too urges that the Chicago Title should not be allowed to use the objection to the homestead defensively even if the Court were to vacate its order avoiding the judicial liens. He and the Debtor agree that the prior order should be left in place. Nevertheless, he argues that Abandonment Motion should be denied as there is value in the Property which he argues would benefit the estate.

**DISCUSSION**

As both parties advocate that the Court leave its previous orders undisturbed, the Court will do so. Maintaining the status quo, however, leaves the Property bereft of any value to the estate.

> 11 U.S.C. § 522(i) provides in pertinent part:
>
> > (1) If the debtor avoids a transfer or recovers a setoff under subsection (f) ... of this section, the debtor may recover in the manner prescribed by ... section 550 of this title, the same as if the trustee had avoided such transfer, and may exempt any property so recovered under subsection (b) of this section.
> > (2) Notwithstanding section 551 of this title, a transfer avoided under...subsection (f) of this section ... may be preserved *for the benefit of the debtor to the extent that the debtor may exempt such property under ... paragraph (1) of this subsection*. (Emphasis added).

The language of this subsection is clear; the judicial lien is preserved, not for the benefit of the estate but for the benefit of the *Debtor.* To remove any doubt, when the Bankruptcy Code was amended in 1994, Congress made known its intent to overrule the majority's position and

accept the dissent's position in *In re Simonson*, 758 F.2d 103, 111-12 (3rd Cir. 1985).[4] As the dissent in *Simonson* stated:

> Once the debtor recovers an avoided transfer pursuant to section 522(i)(1), section 522(i)(2) permits the debtor to preserve the avoided transfer the benefit of his exemption, notwithstanding the usual rule under section 551 of the Code, 11 U.S.C. § 551, that avoided transfers are automatically preserved for the benefit of the estate. *See* 4 *Collier on Bankruptcy,* ¶ 551.01, at 551-1 (15th ed. 1984). In other words, section 522(i)(2) permits the interest of the debtor's exemption to "stand in the shoes" of the avoided judicial liens.
>
> Under my view of this case, therefore, the Simonsons should be permitted to apply to their exemption the value of the avoided liens, $14,411.33, leaving the SBA in the same priority position it occupied prior to the commencement of the case. This result not only effectuates Congress' intent to preserve the debtor's exemption and thereby provide them with a "fresh start," but also prevents a junior encumbrancer from receiving a windfall merely because the debtor chose to avoid the superior judicial liens. *See* H.R.Rep. No. 595, 95th Cong., 1st Sess. 376, *reprinted in* 1978 U.S.Code Cong. & Ad.News 5963, 6332 (noting that a primary

---

[4] In 1994 section 522(f) was amended to include the mathematical formula to be used to calculate when a lien "impairs" an exemption. In adopting the amendment, Congress expressly adopted the *Simonson* dissent.

> The amendment also overrules *In re Simonson*, 758 F.2d 103 (3rd Cir.1985), in which the Third Circuit Court of Appeals held that a judicial lien could not be avoided in a case in which it was senior to a nonavoidable mortgage and the mortgages on the property exceeded the value of the property. The position of the dissent in that case is adopted.

HR Rep. 103-834, 103rd Cong., 2nd Sess. 35-37 (October 4, 1994), U.S.Code Cong. & Admin.News 1994, pp. 3343-46; 140 Cong Rec. H10769 (Oct. 4, 1994).

> purpose of § 551 as a whole is to prevent junior creditors from benefitting at the expense of the estate when senior liens are avoided).

*Simonson*, 758 F.2d at 112 (Becker, J. dissenting).

Following the analysis of the dissent in *Simonson*, as Congress has instructed, and in keeping with the express language of § 522(i)(2), Chicago Title's judicial lien was preserved for the benefit of the Debtor.[5] The judicial lien, however, still stands ahead of the subsequent unrecorded mortgage and April 2007 Deed, whatever its effect. Only now the Debtor, not Chicago Title or the Chapter 7 Trustee, stands in those shoes.

Using the Debtor's figures, the Property is valued at $275,000; the two mortgages, which stand ahead of the judicial lien, are $109,120.07 and $82,502.04, respectively. Next in line is Chicago Title's avoided lien which the Debtor nows holds to the extent of the $68,377.89 he claimed as exempt. Consequently there is nothing left for the estate.

**CONCLUSION**

For the reasons set forth herein, the Abandonment Motion will be GRANTED.

A separate order will issue.

Dated: January 26, 2010

*Joel B. Rosenthal*

Joel B. Rosenthal
United States Bankruptcy Judge

---

[5] The Chapter 7 Trustee has not argued that § 522(i)(2) the use of the word "may " (as compared to the automatic language of §551 which declares that an avoided transfer "is" preserved) confers discretion upon the Court to deny the Debtor the right to preserve Chicago Title's lien.